I'm pleased to be here as the thorn between these two roses and we'll hear argument in the matter of Bobby Joe Smiley et al. v. EI Dupont De Nemours. Please look forward. Judges, I'm Tom Marone representing the plaintiff class. I've ceded most of my time to the Department of Labor. I wanted to make a couple of points briefly and they're not surprising points. The first point I'd like to make is that cutting through all of the regulations and connecting the dots, the deal's a deal. When an employer writes down that they're going to do something and then they do it and they get something in exchange for it, that's the deal. Where was it written? It was written in the policy, the shift relief guidelines, and in the policy governing... Is this the handbook or more than that? This is the handbook and more than that. It's also in their behavior. But the writing, you say the deal is really the handbook. That's the basis for the deal and then their conduct reinforces the deal. But we have case law saying the handbook really isn't an agreement and you're saying it's a deal. Well, it's a deal under the FLSA because you can have a deal in conduct and you can have a deal through and it can be reflected in writing. All right, so it's both you're saying. It's both, yes. And perhaps the larger point is someone reading this will be paid for lunchtime as part of their schedule work shift, understands they're going to be paid for it. And the company benefits from that, not just in a tangible way of they're here and they're working. They get morale. You have a better morale. You have a better workforce. You have a more productive workforce. But surely you can see there's ambiguity in the policy. Your adversary points to that very same language to say here is an explicit statement of our offset policy because it qualifies under what circumstances, what category of people will be entitled to this pay. Given that, say we have to look to the regulations, I'd like to understand from you and also the Department of Labor, are you asking us to look to 320A and B as binary options? That is, we have to, a court has to make a decision implying in some cases simply from conduct that there either was an agreement to treat time as hours worked or was not an agreement not to treat it as hours worked. Why isn't there a third option that may pertain here, and that is there simply was no agreement? Well, in my view, there was an agreement, so I guess there could be a view that there was no agreement. Although you're up against the finding of fact by the district court that there was no agreement. Isn't that, doesn't that have to be overturned only if it's fairly erroneous? Well, that is a finding of fact that is for a jury. That is why we're challenging the ruling. But are you arguing as a matter of law that we are limited to a binary universe, that under the regulation, either there is an agreement to treat it as hours worked or there's an agreement to not treat it as hours worked? Or do you concede that the regulations allow for and don't provide the consequences if there is simply no agreement? There could be, yes, I think there could. If there is no agreement on something, there is no agreement on something. That's a possibility in the universe of possibilities. If there is no agreement, then we move from 223, which says where payments essentially made as compensation for such as these hours are not regarded as working time, they're included in the regular rate of pay unless it qualifies for exclusion. But without an agreement, you don't have 320B that puts you back in the E2 box. But except that they're treating it as time worked. But you're concluding that from the policy, and I understand from your brief, your argument is the fact that they included it in the calculation of the regular rate. Yes, and they admitted it at depositions that they did it. But if you don't get back to 320B, then aren't they required to include it in the regular rate? Then that argument really doesn't help you in showing that they engaged in conduct from which we could infer some intention to treat this as hours worked. Well, the intention to treat it as hours worked is, and I don't mean to be simplistic, and I believe it's simple, not simplistic, to go back to the policy. They're treating work that is otherwise not- Bonafide meal break. It's a bonafide meal break, otherwise non-work time. Exactly. And they've decided to treat it as work time and pay for it. Do you need an agreement to win? No, need conduct to win. Well, do you need an agreement by written or by conduct in order to prevail? Maybe that's better asked of the Department of Labor. I hadn't thought of it that way, Judge. What about Wheeler? Because there is an agreement. Because there is an agreement, and I'm sorry that's not a good answer. I don't know that there is a way to prevail without an agreement. But do you concede that since the district court made a finding of fact that there was no agreement, that's a bit of an uphill battle under a clearly erroneous standard? No, I think in the summary judgment standard, that is, it's de novo. I think that the standard is that you look at that as you would look at a motion for summary judgment, and could a jury find that there was an agreement, so it's not a clearly erroneous standard. Okay. Thank you. We'll hear from Ms. Goldberg. Thank you. Did you want to reserve some time? Yes, I would like to reserve three minutes for rebuttal. Sorry. May it please the court, I'm Rachel Goldberg. I represent the Secretary of Labor's amicus in this case. The FLSA statute and regulations indicate that payments for bona fide meal breaks cannot offset unpaid overtime compensation, and this is true regardless of whether the payments are included in the regular rate, and regardless of whether that time is treated or not treated as hours worked. So I think one of the questions Judge Cruz asked is, is there a binary choice between either treating this as hours worked or not, is a question that I'm happy to address, but ultimately it doesn't actually matter, because the question here is whether DuPont can take an offset for this bona fide meal break payment, and regardless of how they treated it, including it in the regular rate or not, treating it as hours worked or not, they cannot take a credit for that payment. Your position being that the statute needs to provide for the credit, and it only does so in three limited instances. Exactly. Where a payment is included in the regular rate, I'm sorry, where a payment is excluded from the regular rate as provided for in Section 7E of the statute, the Section 7H is very clear. You can only get a credit for certain types of payments, Section 7E, 5, 6, and 7, those types of payments. Other payments that are excluded from the regular rate are clearly by statute cannot be used as a credit. Now payments that are included in the regular rate, they cannot be used as a credit, and that's consistent with basic FLSA principles and basic fairness. The point of the overtime provision of the FLSA is that... Isn't that the beginning and the end of the matter? I mean, the fact that it is included in the regular rate? In terms of whether a credit can be taken? I think that's absolutely correct. Run that, keep telling us why that policy and the double counting, tell us in practical terms how that thinking goes. Well, it's included in the regular rate, so obviously... So I think one thing, it's included in the regular rate, and what that means, when something is included in the regular rate, the regular rate essentially represents the base wages upon which overtime is calculated. As courts have recognized, the regular rate is the key to overtime. So all payments to the employee, hourly wages, attendance bonuses, anything extra that's not excludable by statute, is a base wage. And that is... And the point of the overtime provision is that the premium for working overtime hours, the employer has to pay in addition to that base wage, they have to pay a 50% premium for extra hours in addition to that base wage. And so any payment that has to be included in the regular rate, that's part of that base wage, cannot then be counted as actually having paid that overtime premium. That would defeat the purpose of the overtime premium, which is to require extra payment in addition to that. If you include it in the regular rate, or do not include it in the regular rate, does that alter the calculation of the regular rate? It does. And that's the significance. Here... Because wouldn't the top numerator be the total remuneration? Exactly. And if it's not included in hours worked, then it would be less remuneration. And at the bottom, would be hours worked would be the total hours worked, and if it's not included in hours worked, then it would be less. And wouldn't that... Right. So for example, apart from the credit issue, for example, if an employer is paying an attendance bonus, and it's not for hours worked, it's not tied to specific hours worked. So the hours worked, let's say it's 48 per week of true hours worked, and there's no bona fide no breaks or anything. They pay an attendance bonus, they have to add that into the total amount paid, so that increases the numerator. The denominator is the total hours worked stays the same at 48. So essentially you're increasing the regular rate by having to... That's a bonus. This is not a bonus. So a meal break payment that here, DuPont chose to include it in the regular rate. It didn't have to, but it did. That increases that numerator. However, it also happened to have treated it as hours worked, as shown on the pay stubs. So actually, in effect, it doesn't have the effect of increasing the regular rate because it both increases the numerator and the denominator. So does it really matter? It doesn't matter in terms of the actual regular rate. It doesn't matter. What the effect it has in that situation is that it puts an employee's total hours worked at the 40-hour threshold sooner. Because if you're including the hour and a half each day for a bona fide meal break time, the employee has worked 40 hours sooner than if you had excluded that time. The way you're describing this and thinking about the interplay of these hours, are you essentially equating 320A with that portion of 223 that deals with hours that are regarded as working hours with those consequences? That is, it doesn't have an effect on mathematical calculation, but it's still treated as creating short overtime. I hadn't thought of it that way, but actually I think, yes, I think they are essentially consistent with each other in that if the employer is deciding to treat non-compensable time as hours worked, then you essentially have to treat it just as you would under 223, which is any time that has to be included in the regular rate is included in the regular rate. Is there a difference between it being regarded under the act as hours worked and being treated as hours worked in those two regulations? Not ultimately in that, I mean, regarded as hours worked I think just indicates that the employer had a choice at the outset how it was going to treat the bona fide meal break time. It could have excluded it from the regular rate and not included it in total hours worked. But once it has chosen to include it, then essentially no, I think the result is the same. Does your argument turn on the regulations themselves? If we look at the plain language of the statute, does your position still hold up? Our position is still the same with the plain language of the statute. The regulations are interpretive regulations and they're meant as a guide through all the myriad different ways that employers choose to compensate employees. But if the statute is unambiguous on its face, that's where we would leave our analysis. I think certainly the court could. I think the regulations help illustrate how the statute works, but the statute itself does answer the question there. If we think that on the face of it that bona fide meal breaks are not part of the E-2 exclusion, wouldn't that necessarily mean that they are not covered by subsection H, that there is not a prohibition on offset? Well in that if they're not covered by the E-2 exclusion, that means they have to be is not excludable under any provision of the E, has to be included in the regular rate. So yes, section 7H doesn't apply, but because it's included in the regular rate, there's no offset available for anything that's included in the regular rate. That's a basic principle of the FLSA, that anything that is included in the regular rate because it's part of the base wage cannot be then used to offset extra overtime premiums that are due. Can you address how we can reconcile 778.320B, which says the 207 E-2 exclusion may apply to regular lunch breaks, which it seems to conflict with 778.218B, which says regular breaks do not fall into that occasional 207 E-2 category. Which of these controls? Well, if you look at section 72, there are really three provisions, three clauses separated by semicolons, and the regulation at 778.218 really is about that first provision, occasional periods for vacation, sickness, et cetera. So you'd say the tagline of 3.20B. And in that first clause, it contains its own and other similar. Similar payments. But then the third clause within 72 is its own provision that says other similar payments, which are not compensation for hours of work. And bonafide meal breaks are truly not compensation for hours of work. So the answer is semicolons. The answer is semicolons, yes. And the fact that 3.20B explicitly contemplates the exclusion of bonafide meal breaks from the regular rate. You haven't mentioned Wheeler. I think Wheeler is actually very helpful in this case in that, similar to this case in Wheeler, the employer chose to include payments for holidays, vacations within the regular rate. It, of course, didn't have to. It could have excluded it, but it chose to include it. And the court said once the employer has chosen to include it, it cannot then strip out those against its failure to have included other payments in the regular rate that it failed to include. Well, and it also says, you know, when it's to be credited, the statute says. And I think that is a very clear statement. I think it's a very helpful statement. I realize it was a different scenario, factually. So. You said that DuPont was not required to include the mealtime pay in the regular rate calculation. Why is that? Because it is excludable. It could be excluded under 72, that third clause, the other similar payments. And 778.320B, it makes it clear. But even if it was excludable, then it still would not affect, it would not be entitled to an offset. Correct. Excludable. But they wouldn't have had to pay it. They wouldn't pay it. They wouldn't pay, if they had excluded it, you mean? Well, if they had excluded it, they would still be paying the bona fide meal rate. They just wouldn't have included it in the regular rate calculation, so it's hours worked. Given that outcome that you've described, and you helpfully point us in your AMCA submission to the twin purposes of the FLSA, but both of which are really employee protective, to induce an employer to reduce hours of work and to ensure there's compensation for employees for the burden of long work weeks. In view of that, what do we do with the fact that the position you seem to be espousing, that is, either of these alternatives means that it can't count toward offset, would seem to have the perverse result of creating a disincentive for employers to effectively overcompensate, just for ease of processing and in communication with employees to say, you may have 10 minutes of time for preliminaries and post-preliminaries, but we've decided to be generous to our employees. We're going to cover 90 minutes of a meal break and just count the whole 12 hours, and that's going to more than cover the overtime that would be involved. Isn't your position one that really turns the purposes of the statute on its head? Well, I think there's a couple of ways to look at it. I don't think it ultimately does that because an employer that, for whatever reason, wants to compensate for bona fide meal breaks, they think it helps morale, they want the flexibility to be able to call people back to work should the need arise. Whatever the reason, an employer that wants to provide that benefit, or that has to because of the negotiations, can still provide that benefit. The FLSA just requires them to pay for all their actual hours of work. They're not being punished, certainly here, because they provided that benefit. That's not what got them into trouble. What got them into trouble is that they failed to actually pay for all the hours of work. I can see that in some instances it may actually inure to the benefit of employees if an employer were to do that. However, the FLSA is set up so that the employer has to actually pay for all actual hours worked because there are lots of schemes that employers have come up with over the years that regulations have tried to address where they've tried to shift money around that has the ultimate effect of lowering the regular rate so that they do have to pay less overtime. Most of these provisions are set out to explain how an employer is really not allowed to do that because of many instances, if an employer wants to shift and say, we're just going to give you a lump sum for all the extra overtime you're going to do. It's really a way to skirt the actual regular rate requirements. I know we're taking overtime, but I think we will do that. It's an important case. Do we need to decide whether there was an agreement or not, and how do we look at that? Ultimately, I don't think this case does not hinge on that because as I've said, whether there was an agreement to treat it as hours worked or to include it in the regular rate is ultimately irrelevant. Here I think the evidence indicates that there was an agreement by virtue of the conduct. To me, the most salient fact is the fact that DuPont included the time for the meal breaks in the total hours worked on the pay stubs. It's right there, but ultimately, I don't think the court needs to even reach that far. It can be decided. What's your position on the regulations, the question I was asking your colleague earlier? Do we think of 320A and 320B as our binary options? That is, do we conflate there is no agreement with there's an agreement not to treat it as hours worked, or is there a third category that is simply not addressed by the regulations? The third category being where there's no agreement. There's simply no agreement. I mean, A says there's an agreement to treat it as hours worked, B there's an agreement not to treat it as hours worked. Do courts need to, by conduct, imply that one of those is the case, that there is an agreement and then the consequences are spelled out? Or is there a third category that's simply not addressed that is no agreement? In theory, there is a third category, but in practice, I don't see how there is because an employer has to treat the, they either do include the hours in the total hours worked or they don't. But that doesn't mean that there is a mutual understanding between the employees and the ... Yes. I mean, the agreement. There's no collective bargaining agreement, certainly. There's no agreement on that level, but many times courts have found agreements by virtue of conduct. And here, the conduct, in this particular type of scenario, the employer is either going to include that time in the regular rate and treat it as hours worked or not. So I think there are certainly other payments that don't have to be included, that are included in the regular rate that are not treated as hours worked. And an employer could, in fact, do that here, in that if DuPont wanted to, for whatever reason, include the bona fide meal break payments in the regular rate but not treat it as hours worked, I suppose it could have. That is not what it did here because if it had, the total hours worked would have reflected that. It would have been less each work week. And in fact, the regular rate would have been higher because the numerator would have been higher. So ultimately, I think the conduct of the parties, particularly the manner in which the employer compensates the employee, shows how they're treating it. There's no requirement that it be a written out agreement in that sense. Right. Do you think the language of the regulation deals with the parties have agreed to treat the time as hours worked? Do you think that's different than have reached an agreement? In that, have agreed to treat it is, yes, it's different in that one can just be shown by conduct. In other words, we're not talking about finding the formation of a contract. Exactly. We're talking about, how have they treated this? Right. I think that's a very useful distinction. Well, and the lead into 320 says, in some cases, an agreement, maybe it's acknowledging that there's not always going to be an agreement. I mean, in the absence of a CBA, frankly, I doubt there would be a written agreement about that level of detail. We're going to treat this as hours worked or we're not. I mean, here we have this handbook policy, which I think lends in favor of finding agreement, but it is somewhat ambiguous. But I think the conduct of the parties is really the key to that. But ultimately, actually, I don't think the court even needs to reach that. Thank you very much. Thank you. Good morning. Good morning, Judges. David Fryman from Ballard Spar. I represent DuPont. Although this morning, I'm here on behalf of both defendants, DuPont and Adeko, with the court's indulgence. For ease of reference, I'll just refer to both defendants as DuPont. Your Honors, at the outset, I think it would be helpful to just kind of rewind and reiterate a few undisputed facts that are helpful to frame what I see as two issues before this court. One is DuPont pays these employees for 12 hours. The pay for those 12 hours includes three 30-minute meal breaks. The pay for those three meal breaks is included. Do these employees receive eight hours of overtime each week? Sure. Because they're working 48 hours. Well, we first have to figure out the actual hours that they worked. And that does not include the meal breaks. And we have a concession on that with respect to each plaintiff, how much non-compensable meal break time she worked. And then we look at how much... What does their pay stub look like? They have a pay stub that says 48 hours. Right. Or if they've worked overtime, if they've worked beyond that, it will have more than 48 hours. But the default... What gets calculated at time of half? The default is 48 hours because DuPont, as Judge Krause pointed out, DuPont doesn't want to get into all the minutia of the five minutes of shift relief here or there. It says, you know what? We're just going to deal with it by presuming that everybody's worked at least 12 hours and we've more than covered it by providing these three bona fide. But what of those 48 hours is compensated at time and a half? They didn't work any overtime other than their standard four, 12 hours? Eight hours. Eight hours, okay. Eight hours would be, presumed to the law, that once they've hit over 40. What gives you the right to credit the regular hours paid for as overtime? The statute, Judge, 207. How? That is the starting and the end point. 207 governs how we calculate overtime compensation and the key provision that we've been focusing on is 207, 207E, which tells us how we determine the regular rate. And this is where, and it's interesting, I believe Wheeler is actually very helpful to the defendants in this case. Because the prefatory language in 207E talks about all remuneration for employment. That the regular rate shall include all remuneration for employment. Paid to or on behalf of the employee. The key phrase being, shall be deemed to include. Which in Wheeler, Judge Smith. Shall not be deemed to include. Well, no. It shall be deemed to include except the following, which shall not be deemed to include. And this doesn't fall in any of those categories that shall not be deemed to include. And what the issue that Judge Smith was dealing with there was with respect to the shall not be deemed to include, that is the exclusions, that that was not a mandatory, that that was a choice. Well, why is that unambiguously so? Your colleague across the aisle was pointing out that there's pretty broad language in E2 as it goes through the list of things that can be covered. Isn't that why we have regulations that are spelling out how even bona fide meal breaks would presumptively be treated? Because that list ends up with a very broad provision of similar payments to an employee which are not made as compensation for his hours of employment. Two points on that. First is, in E2 it talks about occasional. The plain language refers to that and it gives examples of that. But we've got semicolons, we've got semicolons. But then their own regulations, Judge, in 218B explicitly say this is not intended to address meal breaks. Well, that's why I asked about the conflict with the other section, yeah. And in fact, it also, in 223, says that the default is they must be included. And I disagree with the Department of Labor that there is a choice here that DuPont can make with respect to these meal break payments. If they don't qualify for one of those exclusions, they must be included in the regular rate. And that is what Judge Smith, I believe, held in Wheeler. That it was a choice with respect to amounts that did fall within one of those exclusions. That was the holiday, the vacation, the sick pay. That if an employer wants to include it in there, they can, but they don't have to. But with respect to amounts that don't fall in one of those enumerated eight categories, they must be included in the regular rate. But doesn't 320B take you right back to, even if you don't think it's apparent from the face of the statute, doesn't the regulation put you right back into E2 as qualifying for that exclusion? Well, with all due respect to the Department of Labor, I have an issue with 320B that I believe is contrary to 207A. Because 320B says that where it appears from all the pertinent facts that the parties have agreed to exclude such activities from hours works, payment for such time will be regarded as qualifying for exclusion. Well, that's the Department of Labor unilaterally making up their own exclusion there. It's 207E that determines what can and can't be excluded. And if these are meal breaks, which the Department of Labor has said in 218B don't qualify under 207E2, then they must be excluded. And so how is it that they say in 320B that while we can have this side agreement, this side deal, that if we're treating bona fide meal breaks, which by definition are non-compensable time, that we're then going to exclude them from the regular rate? 207E doesn't permit that. What do we make of the fact that DuPont treated the meal break pay as part of the regular rate? What I'd make of that is simply following the statute, following 207E. Well, once it's included in the regular rate, though, and you're saying I take it that it must be included in the regular rate, how can you get a credit for other hours worked that are otherwise not compensated? Once you've been included in the regular rate, to borrow your words, Judge, that's the beginning and the end of it. Because now once it's included in the regular rate, it's simply a matter of calculating what are the hours worked, and if we don't have an agreement to treat these meal break hours as hours worked, they're not hours worked, so it's simply we now have the appropriate regular rate because we've included those meal break payments in there, and it's simply a matter of applying that calculation. That's why there isn't a specific provision that says you can credit in this instance. There's no need for it because it's simply a matter now of applying the formula. The Department of Labor and Congress knew how to deal with an offset when they needed to. There hasn't been any mention here of the regulations 785.18 and 785.19. 785.18 talks about rest breaks, which under the law, because they're only 20 minutes or less, it's been determined are compensable as a matter of law. The Department of Labor, now we have on its face hours worked. We don't need any agreement. They're telling us those are hours worked, that's compensable time, and so the Department of Labor goes out of its way to say, and you can't offset, you can't credit that payment for that time. Even though the employee's not working, we've deemed that that is compensable as a matter of law. 785.19 deals with meal breaks. It says bona fide meal periods are not work time. And it doesn't say anything about that you can't offset. That is kind of apples and oranges to the computation of the regular rate, etc., etc., and how we credit over time. I mean, that bona fide meal periods do not include coffee breaks. These are rest periods. Employee must be completely relieved from duty. I mean, that's more qualitative than a quantitative. Yeah, but 785.19, Judge. But if you decide to treat them as work time, for purposes of payment, that doesn't really conflict with how you have to actually treat the employee during the time period. That judge, I believe, puts the rat in the hat. The question is, have we, just by paying them, decided to treat them as hours worked? Well, the handbook is certainly some evidence. But the preamble to 320 makes clear, pursuant to its own revision, almost 30 or some more years ago, made clear that payment for the time, in and of itself, does not convert it into hours worked. But I'm an employee up there. I'm doing my work, and I get my pay stub, and it says I worked 48 hours. Now you're telling me six of those hours you didn't work. Isn't it, from a transparency point of view, one that at least the worker can understand what they're getting paid for, and that's being treated as hours worked? Why isn't transparency an issue here? Judge, I believe it is transparent, and in fact, to Judge Krause's point, we're doing the employees a favor here. We're actually compensating them at a greater rate, because we're including those payments in the regular rate. We provided an example, and I noticed last night in reviewing this, there was a mistake in the calculation in the hypo that we provided. If you look at that hypo where we said, look, let's assume $10 per hour, four 12-hour shifts, 48 hours. You do the 10 times the 48. Let's assume 30 minutes of pre-shift compensable time, and then the three 30-minute non-compensable bona fide meal breaks. When you figure out how much time they're actually working, that's 44 hours. You subtract out the 90 minutes. Why aren't you taking that out of the denominator, those hours worked? Because that would increase. You have to include all the remuneration. Right, which we do. If you took out hours worked, that you say are non-hours worked, if you took out from the 48 hours, the six hours, their base rate would go up. That's right, and they get paid more. They would get paid more, but you're not doing that. No, we are. No, you are treating their regular rate as including those six hours of meal time. That's right. That's in the denominator. No, that's in the numerator. Again, that example, you got $10 an hour times 48, and then you divide by the actual hours worked. In that hypo I just gave, that would be 44 hours. But if you excluded the meal break payments, the initial multiplication would be 10 times 42. You can't exclude the payments. That must include all remuneration. But they're suggesting we do that. They're suggesting we do that, and if we were to do that, the employees would get less. I get back to the statute. Where is it in the statute that you are permitted to credit these payments against overtime? Where is it in 207? I argue that it's right in 207E by mandating that it's included in the regular rate. But isn't this where Wheeler goes directly the other way, because it says where a credit is allowed, the statute says so, and it's pointing specifically to E5, 6, and 7. I would respectfully disagree with that statement, that that was on some very specific facts in Wheeler, but on a very different type of credit situation. If we look at the facts in Wheeler, we had two different types of payments, one which are like the meal break payments here, that's the incentive pay, which doesn't fall in any of those E category exceptions, and that the employer and the union by agreement said, well, you know what, we're not going to include that. And Judge Smith of the Third Circuit in that case said, no, you must include that. And then there were these payments, holiday sick, that clearly did fall within E2, that by agreement, the party said, well, we'll include those. And so essentially it was kind of no harm, no foul, it all works out in the wash. We're being creative in our collective bargaining, and they got Judge Ambrose to agree that at the end of the day, the employees allegedly made out better. And what the Third Circuit said in Wheeler was, no, you can't contract around the FLSA with respect to those incentive pay, they must be included in the regular rate. And this credit issue was simply trying to take a credit for the fact that, well, we included certain payments that we didn't have to, so that takes care of the ones we excluded that we did have to. That seems very close to what we have today. Yeah, and the case really talks about the fact that, you know, there are a few exceptions here where there's this premium and extra compensation, but, and it says rather, the township seeks a credit for allegedly including non-work pay, presumably at a non-premium rate in the CBA's basic annual salary. The FLSA does not provide for such an offset. So we're saying, listen, there are these three premium categories, and they're different, but how is this, this is non-premium pay. How would the reasoning in Wheeler allow us to say, well, of course it could be offset? 207H, an argued judge, 207H is the only provision under 207 that addresses the offset. And 207H applies exclusively to those amounts excluded from the regular rate. Well, and 778.201 confirms the limited offset, does it not? Applicable to 207H, I would argue. But 302B, unless we're going to hold this regulation ultra-various, points us right back to these bona fide meal breaks, accepting DuPont's position that there was an agreement not to include them, or that we can, from the conduct involved, we should include, that they were not going to be treated as ours worked. Doesn't that point us right back to E2, and we're back into Wheeler's directive? There's absolutely no basis to put these payments in E2, according to the Department of Labor itself. Would we have to hold the regulation ultra-various to reach that result? Well, I do, as I believe I stated earlier, I believe 320B conflicts with 207E, insofar as it says that if there's some agreement to not treat these as ours work, which is by definition a bona fide meal break, that somehow they now can be excluded from the regular rate. And I maintain that's contrary to what 207E tells us, and in fact, the Department of Labor's other regulation in 218B, which says meal break payments are not meant to be part of 207E2, are occasional, are not occasional. They happen every day, as they did here. I have a slightly different question, but it goes to something the judge was asking about earlier, and that is the definition, the meaning of wages themselves, because where you have the situation of an employer who decides to be more generous than it needs to be by overcompensating for the amount of overtime worked, by paying for things that it's not required to pay for, treating those hours as compensable, but we have 29CFR531.35, which says that wages are not considered to have been paid unless they are paid finely and unconditionally, or free and clear. The approach that you're taking, which would sort of allow a post hoc offset, and what in fact occurred here, and it appears to have come as a surprise to the employee plaintiffs,  that is they weren't free and clear, they were with this ability to retract them afterwards, and the regulation seems to preclude that. Judge, I would disagree with the characterization of a post hoc, post hoc anything here. I believe that the payment of these wages here is entirely consistent with the statute, and that's all the statute requires, that you pay for all hours worked. We follow the statute with respect to including these payments in the regular rate, as we've discussed at length, I maintain that by including them in the regular rate, then there is no reason that then we simply don't apply the formula of the rate times the hours worked, and if over 40, time and a half, and the employees are getting all the wages to which they are entitled, and that's what the statute requires. If we were to adopt the position of the Department of Labor here, are there other ways that an employee who take a simpler approach, and simply pay a lump sum covering what might range in terms of minutes of pre and post preliminary activities, could do so, could structure this in a different way that wouldn't create the ambiguities around whether this was hours worked, and its consequences for overtime? I don't see anything preventing it, but I also don't see the ambiguity here, with respect to the arguments about an agreement here. I believe this policy, by its terms, is simply reflecting an intent to follow the statute, an intent to do exactly what DuPont's doing, particularly when you read it in the context of those employees who are not working in the 24-7 operations, where there is this handoff pre and post, pre-shift here, where they're engaged in this shift. I'd also note that every court to have reviewed this issue has come down in favor of the offset, with the one exception where it was conceded that the amounts were excluded from the regular rate. We've got the 7th Circuit, the 11th Circuit, and all these district courts coming down We also have a per curiam case in Lucas Enterprises, right, from the 6th Circuit. Yes, but I don't believe that case addresses the same issue. And I apologize, Judge, I don't have Lucas at my fingertips, but I don't recall that case. I think it does, and it comes out in a way that's similar to what the Department of Labor has, and Appellant, has urged here. I believe arguably that there was also the 6th Circuit decision. I understand that the 6th Circuit didn't address it explicitly in the Ruffin decision, but affirmed a district court in that case that did credit the meal break payments in that case. And that was the 6th Circuit. And the two circuits that we do have that you point to in support, the 7th and 11th, they don't engage in the analysis of the regulations that has been the subject of our discussion today. I absolutely agree, and I would maintain there's not a great deal of analysis because I think it's pretty straightforward. And that when the statute tells you you can't do this, I'd frame it more in the negative than the positive, that 207-H says, hey, this is when you can't do it. The Department of Labor in 785-18, this is when you can't do it. But hey, once it's included in the regular rate, it's simply a matter of applying the formula of the rate times the hours worked, because we now have, it's mandated that it must be included in the regular rate. If that were true, how would you distinguish hours actually worked that are also included in the hourly rate and appear on a pay stub as an hourly rate? I mean, doesn't that, if you take that to its logical conclusion, doesn't that just give free license to an employer to take any hours that are hours worked that have been paid by the regular rate and apply it toward overtime? That's a different calculation, Judge, of what the actual hours worked are. You first have what is the regular rate, but then you need to determine what the hours worked are when you apply that formula. You would distinguish hours that are treated as actually worked from hours that are actually worked? You would distinguish what we're paying for in coming up with the regular rate. That's right, the time that we're paying for. Thank you. Thank you. I now have a problem with, when I said it's all about semicolons, I don't necessarily agree. When you get onto E2, talking about occasional periods, no work is performed, vacation, holiday, illness, other similar cause. Then after the first semicolon, reasonable payments for traveling expenses or other expenses incurred, semicolon, and other similar payments to an employee which are not made as compensation for his hours of employment. How is this a payment similar to an occasional vacation, illness, traveling expense? Well, Your Honor, it's similar in that it is not made for, it is not made as compensation for hours of work. Well, then they could have said other payments which are not made as compensation, but it says other similar. Similar has to relate to something. Well, it relates to both of the two clauses above. Right, but regular bona fide meal times are not at all like these sporadic travel expense or vacation. Well, the second clause, the reasonable payments for traveling expenses, there's no requirement that that be occasional. No, I know, but it is occasional. Well, but no, it could be incurred very regularly. Well, but it doesn't, it's not every Monday, every Monday, every Monday where a meal break is three times a day, which is totally regular. I mean, travel has to be occasional. I can envision work situations where travel is predictably every Monday you have to visit this one site. But the expenses aren't going to be exactly the same. No, they aren't, but the occasional is, there's no requirement that traveling expenses be occasional. And I think that the similarity is truly in that the compensation is not made for hours of employment. And I think that's reflected in the regulation at 778-320 that specifically permits payments for bona fide meal breaks to be excluded. What's interesting is that, frankly, that regulation that permits an employer to exclude payments from the regular rate, which Boleros recognized as the employer did, and that was fine, that is a benefit to an employer. DuPont didn't do that here, but actually that provides, I mean, talk about disincentive, there's no disincentive to providing a payment for a meal break because the employer can actually just exclude it from the regular rate, exclude it from the hours worked. It doesn't reach the 40 hour threshold sooner. It doesn't inflate the regular rate. It can still pay this meal break time, but then, of course, cannot take an offset. The other thing I'd like to point out is that, interesting, apart from whether it could be excluded from the regular rate or not, DuPont has not pointed to anywhere in the statute that affirmatively says an employer can take a credit for a payment that is included in the regular rate, even if you accept their premise that they had to include it in the regular rate. Even if that is true, there's nothing in Section 7E that permits a credit. Well, or a credit for anything other than 5, 6, or 7. Exactly. And there's a reason why there's a credit for only those three types of payments. Those are essentially overtime premiums. So it makes sense that there's a credit for those.  And in that case, it was a payment that had been included in the regular rate. Do we make any distinction between the statute talks about sums actually excluded, just as excluded, but E, by a plain reading, seems to deal with the hours that are actually excluded. 320B talks about time that qualifies for exclusion from the regular rate. Are those different, or is that just for contrast? No, I think even B, it has to have been actually excluded. That's what I think B is contemplating, that the time was actually excluded from the regular rate because it was not treated as hours worked. And in fact, you're right in that the regular rate is always the actual fact. It's what was actually done. So in Wheeler, for example, they could have excluded. It was excludable, this holiday payment. But the fact is they didn't exclude it. So the actual regular rate was having included this payment that they could have excluded. So you're suggesting 320B doesn't apply if the hours have, although qualifying for exclusion, have not been excluded? I thought you were arguing the opposite, that because it talks about qualifying for exclusion and then the payments for such hours cannot, of course, qualify as overtime premiums, that whether they're actually excluded or not, they qualify for exclusion and under the terms of the regulation and pointing right back to E2 and therefore to H, they can't be used to offset. I'm sorry, I might have misspoke or I might be misunderstanding your question. My understanding, my reading of 320B is that they can exclude the bonafide mail break time. And if they do so, of course, it's not included in the regular rate and an offset is not available. But if an employer chooses not to exclude it, qualifies for exclusion under 320B, but they opt not to exclude it, they include it as here in the calculation of the regular rate, does 320B still apply, does the next sentence still apply, even if it's not actually excluded? I'm sorry, which is the next sentence? The payments for such hours cannot, of course, qualify as overtime premiums, creditable toward overtime compensation. Well, if they didn't actually exclude it, then you're back in A, because they actually included it in hours worked. I think it assumed, in that sense, it seems to me it assumes because they've agreed to exclude the activities from hours worked, that they actually have. And that the payment will be regarded as qualifying for exclusion under 72. Yeah, that's how I've always read it. It's saying that you can exclude it, and in fact, it's assuming that you did. And then it just points to how you reasoned through it. That's how I have read it. Because if, in fact, you didn't exclude it, then you're in Paragraph A, where you have included it in the total hours worked. Or there's no agreement. Yeah. Option three. I mean, and the facts here, they did include it in the total hours worked, and of course, they included it in the regular rate. Okay. So the inclusion in the regular rate, in the department's view, automatically gives rise to an agreement to treat it as hours worked. Not necessarily. Including it in the regular rate does not, just as paying it does not automatically convert it to hours worked. It's the fact that they did treat it as hours worked on the pay stubs. That's what shows that they treated it as hours worked, is their conduct in doing so. You can include an impayment, and theoretically, DUPONT could do what it did here. It could include a payment in the regular rate, and not treat it as hours worked, but that's what they say they did. But they didn't actually do that, because otherwise, their regular rate should have been higher. Because the total hours worked should have been less. But either way, if they include it in the regular rate and treat it as hours worked or not treat it as hours worked, it's included in the regular rate and cannot be used as an offset. That violates fundamental FLSA principles of double counting, and that is what DUPONT distinctly has not shown why they get a credit when they include a payment in the regular rate. If an employer can get a credit for anything that it includes in the regular rate that it didn't have to pay, that it wasn't obligated under the FLSA to pay, attendance bonuses, production bonuses, efficiency, those types of bonuses, well, what's to stop an employer from taking a credit for that? And obviously, the FLSA is not intended to permit that, because the FLSA is intended to provide an overtime premium in addition to anything that's included in that base wage, that regular rate. What if an employer says explicitly in its policy or in agreement with the employees that it is not treating this time as hours worked, that it's paying these hours for the sole purpose of covering the whatever overtime, which will be far less in preliminaries and post-preliminaries. That's the explicit statement in agreement with the employees, but nonetheless includes it in the hourly rate. Does 320A apply or 320B apply? So if an employer pays a lump sum, ostensibly for overtime, however many overtime hours are actually worked, and includes it in the regular rate. The employer pays the equivalent of these meal times, but says explicitly, this is not for hours worked. This is to more than compensate for preliminary and post-preliminary time, but we're just going to pay the full 90 minutes. Well, that's a bit of a fiction, because if they're saying it's paying for the donning and doffing and shift relief time, then it is paying for hours worked. But it's actually, the problem there is that it's paying a lump sum for a varying set of hours worked, and the FLSA specifically does not allow that. I would point to the regulation at 310, which contemplates that exact scenario, and specifically says an employer cannot pay a lump sum for varying hours of overtime, because in fact what that payment is, needs to be included in the regular rate and cannot be taken as an offset, because what the FLSA requires is overtime payment for actual hours of overtime worked. If the court has no further questions, thank you very much. I do want to express the court's appreciation to the Department of Labor for serving as an amicus in this matter. I think the court has been helped immeasurably in understanding the issues in this case by the involvement of the Department of Labor. I do want to commend counsel on both sides for excellent arguments in what is a very important issue and a very close issue. Thank you. Thank you very much.